## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **EDWARD BOLIAUX,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | **No.: 19 CV 3955** |
| **vs.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM IN SUPPORT OF MOVANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

Now comes the movant, Edward Boliaux, by and through his undersigned attorney, and respectfully moves this Honorable Court, pursuant to 28 U.S.C. § 2255, to vacate and set aside the sentence entered in violation of Mr. Boliaux's Fifth and Sixth Amendment rights to due process and effective assistance of counsel, to set resentencing and to grant him all fair and equitable relief to which he may be entitled. In support of this motion, Mr. Boliaux offers the following:

## PROCEDURAL HISTORY

Mr. Boliaux was charged by way of indictment on February 24, 2016. The indictment alleged that Mr. Boliaux had violated 18 U.S.C. §§ 1343 and 1344. Mr. Boliaux persisted with his not guilty plea and exercised his constitutional right to a jury trial. On June 12, 2017, a jury found Mr. Boliaux guilty of all ten counts contained in the indictment. After unsuccessfully filing a motion for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure and a motion for a

new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, Mr. Boliaux was sentenced to a 48-month term of imprisonment on February 7, 2018.

A timely notice of appeal was filed on February 13, 2018. On February 12, 2019, after extensive filings and argument, the Seventh Circuit Court of Appeals denied Mr. Boliaux's appeal and affirmed the District Court's findings. A Petition for Rehearing was timely filed on February 26, 2019 was also denied. On June 2, 2019, Mr. Boliaux filed a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. Mr. Boliaux respectfully submits this memorandum in support of that motion.

## ARGUMENT

A petition to vacate or set aside a judgement and sentence must be granted whenever a petitioner shows that the "sentence was imposed in violation of the Constitution or law of the United States." 28 U.S.C. § 2255. Although it is an extraordinary remedy because it asks the district court to reopen a case that has already had the opportunity for full process, *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007), relief must be granted for error of law or fundamental defects which inherently result in a complete miscarriage of justice. *Harris, v. United States,* 366 F.3d 593, 594 (7th Cir. 2004). The instant petition puts forth two such cause: first, that Mr. Boliaux's rights to due process were violated by the government's knowing and reckless use of false testimony and evidence during the grand jury process, and, second, that Mr. Boliaux's Sixth Amendment right to

effective assistance of counsel was violated by his counsel's performance fell below reasonable standards. Both of these prejudiced Mr. Boliaux, irreparably.

Knowingly and recklessly presenting evidence to a grand jury, while seeking an indictment certainly triggers a Constitutional violation. Considering a grand jury is embodied in the Fifth Amendment commanding that no federal prosecution shall occur "unless on a presentment or indictment of a Grand Jury," it is without question that the government's "knowing use of false testimony violates due process." *United States v. Useni*, 516 F.3d 634, 656 (7th Cir. 2008). A similar constitutional violation occurs when an individual is deprived of his Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Here, both constitutional violations are readily apparent. While seeking a grand jury indictment against Mr. Boliaux, the government knowingly presented false evidence to the grand jury. While it is Mr. Boliaux's position that there were several instances of false testimony throughout the entire grand jury process, the allegations contained within this petition stem from the testimony of an FBI agent, who falsely testified that the 2002 Silverado that was at the heart of the indictment, was "double floor-planned" and that there were four payments processed through BluePay in the Spring of 2011, knowing that both such statements were patently false. Not only were both of these assertions false, but both were the crux of the charges, without which a reasonable grand jury would not have been able to return charges. In regard to ineffective assistance, Mr. Boliaux's counsel should have recognized the government's flagrant misconduct and motioned

the district court to dismiss the indictment.  To the end, his counsel also failed to

cross-examine a material government witness at trial whose testimony was directly

contradicted by a Secretary of State report in his possession.

### a. The Government's Knowing Presentation of False Evidence to the Grand Jury Violated Due Process and Caused Prejudice

On at least two occasions, the government presented the grand jury

investigating Mr. Boliaux with false evidence through the testimony of FBI Agent

Tracy Balinao.  The indictment the government was seeking to return was based on

the premise that Mr. Boliaux, through his companies EMC Automotive, Inc. and

EMC Acceptance, LLC engaged in a scheme to defraud through which vehicle were

"double-floorplanned", meaning he received funding twice for the same vehicle.

Because the wire fraud charges stemmed through the double-floorplanning of a

2002 Silverado (all four wire fraud charges referenced the same vehicle), the

government had to prove to the grand jury that not only was the 2002 Silverado in

question double-floorplanned, but that such misrepresentation caused the use of an

interstate wire.  *See* 18 U.S.C. 1343.  The government, however, knowingly

presented false evidence regarding both of these aspects of the indictment.  Because

no other evidence was presented regarding such a scheme or interstate wire

transfer at the grand jury stage, there is grave doubt without a grand jury would

have chosen to indict otherwise.

A grand jury is essential to preserve an individual's basic liberties.  *See*

*United States v. Calandra*, 414 U.S. 338, 343 (1974).  To that end, the "grand jury

performs the dual function of determining if there is probable cause to believe that a

crime has been committed and of protecting citizens against unfounded criminal prosecutions." *In re Walsh*, 623 F.2d 489, 492 (7th Cir. 1980) (other citations omitted). For that reason, a grand jury is greatly dependent on the government "present so it such evidence as it needs for its performance of its function and to furnish it with controlling legal principle." *United States v. Udziela*, 671 F.2d 995, 998 (7th Cir. 1982); *citing United States v. Ciambrone*, 601 F.2d 616, 622 (2d Cir. 1979). And this is reflected in the courts' fundamental concern for protecting the integrity of the judicial process, "particularly the function of the grand jury, from unfair or improper prosecutorial conduct." *Id.* at 999; *citing United States v. Chanen*, 549 F.2d1306, 1309 (9th Cir.), cert. denied, 434 U.S. 825 (1977).

> As the Ninth Circuit noted in reversing a defendant's conviction:

> the Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached. Whenever the prosecutor learns of any perjury committed before the grand jury, he is under a duty to immediately inform the court and opposing counsel-and if the perjury be material, also the grand jury-in order that appropriate action may be taken.

*United State v. Basurto*, 497 F.2d 781, 785-86 (9th Cir. 1974). In further noting that the use of false testimony to obtain tainted conviction goes against "any concept of ordered livery" *Id.,* at 786; *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959), *Basurto* concluded that a conviction may be reversed:

when the government allows a defendant to stand trial on an indictment which it knows to be based in part upon perjured testimony. The consequences to the defendant of perjured testimony given before the grand jury are no less severe than those of perjured testimony given at trial, and in fact may be more severe. The defendant has no effective means of cross-examining or rebutting perjured testimony given before the grand jury, as he might in court.

*Udziela*, 671 F.2d at 1000; *citing Id.*, at 781.

The basis of the wire fraud charges contained in the indictment against Mr. Boliaux was that a 2002 Chevrolet Silverado was "double-floorplanned" and such was not disclosed to a subsequent creditor when financing the vehicle. Agent Balinao testified as follows:

> Q.     All right. Now, was one of the vehicles that was double floor planned a Chevy Silverado.
>
> A.     Yes.
>
> Q.     And that was sold by EMC on an installment contract, alter repossessed, and then resold by Joliet Motors, correct?
>
> A.     Yes.
>
> Q.     All right. The next Grand Jury exhibit in your stack in Grand Jury Exhibit Trybalski Vehicle[1]. Do you see that?
>
> A.     Yes.
>
> Q.     And so this is a vehicle purchased ultimately by an individual named Darren Trybalski, correct?
>
> A.     Yes.

*See* Transcript of Proceeding, 10 GJ 689 (Feb. 24, 2016, pg. 30-31).

---

[1] Attached as Exhibit A to this petition.

As a preliminary matter, the Grand Jury Exhibit Trybalski Vehicle is in and of itself false and misleading. *See* Exhibit A. The document lays out a timeline as to when the 2002 Silverado was originally sold, when it entered into each floorplan financing agreement, and when the vehicle was ultimately sold to Trybalsky. *Id.* The exhibit, however, strategically withholds information that one of the floorplanned financing agreement was completely paid off, in April 2008, prior to the issuance of a new title by the Illinois Secretary of State. *See* Exhibit B. This document was clearly known to the government as it was produced during discovery. This, alone, proves that the 2002 Silverado, which is the only vehicle at issue in the indictment as it relates to the wire fraud charges, was not double-floorplanned. But this Court need not take Mr. Boliaux's word for this. In fact, the government themselves conceded that the 2002 Silverado was not double floorplanned:

| COURT: | Let me ask you a question about the Silverado. The $8,500 that you're attributing to the value, I take it, of the Silverado – |
|---|---|
| GOV'T: | Correct. |
| COURT: | - was that not already taken into account in the principal that had been extended for that Silverado as to some of the victims? I just want to make sure there is no double-counting of value. |
| GOV'T: | It was not. That vehicle was converted – I believe it was only financed on the MAFS line. So it was single-financed vehicle on the receivables line, which we didn't include any loss for vehicles that were sold *that were not double-floorplanned*. |

*See Transcript of Proceedings*, 16 CR 115 (Feb. 7, 2018, pgs. 9-10) (emphasis provided).

The government false evidence to the grand jury did not end there, however. In fact, the same agent testified regarding wire transfers that they knew never existed:

> Q.  And for those four payments that are listed, each of $330 between March of 2011 and June of 2011, did the BluePay employee give you any idea of what interstate wires would be generated as a result of those four payments?
>
> A.  There would be a wire from the company that handled the back end of the transaction, which was First Date Omaha, and then there would be a wire to the PNC Bank.
>
> Q.  Okay. On the back end.  But on the – when the card is first swiped, there's an authorization process, correct?
>
> A.  Right.
>
> Q.  And so that has to go from the terminal to a First Data Corporation computer?
>
> A.  In Omaha.
>
> Q.  In Omaha, Nebraska?
>
> A.  Yes.

*See* Transcript of Proceeding, 10 GJ 689 (Feb. 24, 2016, pg. 33).  At the time of this testimony, however, both the government and the testifying agent were in possession of correspondence from a BluePay employee plainly stating that the BluePay account was inactive during the time period in question.  *See* Exhibit C. Specifically, the Vice President of Risk sent an email directly to Agent Balinao stating that "[s]tatement from JAN 2011 through JAN 2012 contain only minimum

monthly fees.  The merchant never cancelled the account with us, but they stopped

processing in NOV 2010."  *Id.*  This email was in the government's possession for

nearly a year before the grand jury testimony in question, yet they still presented

the evidence as if it were true, fully knowing that it was not.

Although Mr. Boliaux is mindful that "dismissal of an indictment following a

conviction is an 'extraordinary' remedy", *United States v. Casamento*, 887 F.2d

1141, 1182 (2d Cir. 1989), here, it is clear that such is warranted.  To "warrant a

dismiss of an indictment after a conviction, 'the prosecutor's conduct [must]

amount[] to a knowing or reckless misleading of the grand jury as to an essential

fact."  *Id.; quoting United States v. Bari*, 750 F.2d 1169, 1176 (2d Cir. 1984).  Based

on the information known to the government at the time of the grand jury

testimony, it is clear that is exactly what happened.  They knew the 2002 Silverado

was not double-floorplanned and they knew that BluePay did not process the

interstate wires.  Yet, the government presented testimony that this was true in

hopes of getting an indictment returned against Mr. Boliaux.  Even if the

government did not know the testimony was false at the time of the grand jury, but

found out at a later point – as we know they have considering they, themselves,

produced discovery contrary to their grand jury assertions – they must have either

dismissed the indictment against Mr. Boliaux themselves or corrected it before the

grand jury and sought reindictment.  *Udziela*, 671 F.2d at 1000.  They did neither.

This undoubtedly prejudiced Mr. Boliaux.  In the four counts charging Mr.

Boliaux with wire fraud, the grand jury had to find probable cause not only that

there was a material misrepresentation, but that there existed an interstate wire in furtherance of the scheme to defraud. *See* 18 U.S.C. § 1343. The two instances of false evidence introduced to the grand jury by the government go directly towards those two elements: the 2002 Silverado was not double-floorplanned as the government alleged and the BluePay interstate wires did not exist. Sure, this would put in "grave doubt that the decision to indict" was unduly influenced by false evidence presented. *Useni*, 516, F.3d at 656; *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (finding that dismissal of indictment is appropriate if it is established that violation substantially influenced grand jury's decision to indict, or if there is grave doubt that decision to indict was free from substantial influence of such violations). There can be no question that without any more evidence to those essential elements of wire fraud, it is likely, if not certain, that a grand jury would not have indicted Mr. Boliaux. The government simply did not present other testimony directly to the elements in questions.

To that end, the Eighth Circuit has found that there need be only "*some* evidence of gross deception by the prosecutor" to dismiss an indictment for improper grand jury conduct. *United States v. Cady*, 567 F.2d 771 (8th Cir. 1977) (emphasis provided). While this Circuit has not expressly ruled what level of misconduct warrants dismissal besides "gross deception" and intentional conduct, other Circuits have addressed the issue. For example, the Third Circuit has held that "a pattern of constitutional violations" on behalf of the prosecutor establishes that he acted recklessly while prosecuting the defendant, and, therefore, engaged in "willful

misconduct" warranting dismissal of an indictment. *Government of Virgin Islands v. Fahie*, 419 F.3d 249, 255-56 (3rd Cir. 2005) (joining the Ninth and Tenth Circuits in finding willful misconduct warrants dismissing an indictment); *see also United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993) (echoing the Eighth Circuits "flagrant misbehavior and substantial prejudice" prosecutorial misconduct analysis). Similarly, the Second Circuit has held that dismissal is warranted when the prosecutor knowingly or recklessly misleads a grand jury as to an essential fact. *United States v. Lombardozzi*, 491 F.3d 61 (2nd Cir. 2007). The Eighth Circuit has also relied on and adopted Second Circuit precedent addressing claims that the government knowingly presented perjured testimony to the grand jury regarding a material issue to deliberations. *See, e.g., United States v. Levine*, 700 F.2d 1176, 1179-81 (8th Cir. 1983).

As it has become abundantly clear, had the grand jury been apprised of the true facts, and not material misrepresentations, there would have been no probable cause found to return an indictment *See Napue v. People of the State of Ill.*, 360 U.S. 264, 270 (1959). Instead, the grand jury was presented evidence by the government which the government knew, or certainly should have known, was false and misleading. Although a grand jury is an accusatory body used by the government to obtain indictments against individuals they believe to have engaged in criminal wrongdoing, during which the government does not have a duty to present exculpatory evidence, the government does have the obligation to only present evidence that they know to be true. However, when the government presents false

evidence to a grand jury, whether knowingly or recklessly, they undermine the integrity of the entire criminal justice system. This cannot be tolerated. An accused is generally defenseless during a grand jury investigation and individuals must have faith that if they were to be charged, such charges would be based on nothing less than truthful and accurate facts. When, instead, there are intentional misrepresentations, or there is a pattern of reckless misconduct, an irreparable violation of Due Process occurs, one which can only be cured by dismissing the indictment with prejudice. Here, it is readily apparent that there was a continuous pattern of material misrepresentations being made in an effort to secure the charges against Mr. Boliaux.

Such misrepresentations have been apparent throughout the government's case against Mr. Boliaux as evidenced by their consistently false statement regarding the use of Joliet Motors to process payments, as charged in the indictment. In fact, there was absolutely no evidence to suggest that Joliet Motor's processed any payments. It is well-documented that BluePay was the credit card processing company for Joliet Motors and it is well-documented that the Silverado was never double floorplanned and AFC never had any interest in that vehicle. Both this Honorable Court and the Court of Appeals relied on this false representation made by the government as stated in their opinions, "the charged wires traveled from Joliet Motors across state lines" and the payment were made to the detriment of the lenders interest. The government also presented the jury with a patently false argument that the 2002 Silverado regarding AFC's interest in the vehicle.

While at trial the government continuously argued that AFC was defrauded. But the government know that the Silverado was financed by Manheim Financial Services, *see supra*, and that the only contractual agreement was between Manheim Financial Services and EMC Acceptance, not AFC[2]. As will be discussed in further detail below, the government harped on AFC's interest in the 2002 Silverado and even presented testimony alleged by Mr. Boliaux somehow acted improperly took possession of several vehicles, including the Silverado (see testimony of Todd Rowen), when in fact AFC has no right the vehicles and Mr. Boliaux's actions were vindicated by the Secretary of State. *See Supra*.

While these misrepresentations may not, in and of themselves, serve to fully vindicate Mr. Boliaux within the context of a 2255 petition, they certainly show a pattern of misconduct and misrepresentation on behalf of the government. The government had a vendetta against Mr. Boliaux from the beginning. They followed through by misrepresenting material facts to both the grand jury and the petit jury. While many courts seem reluctant to overturn the guilty finding of a petit jury, the government's grand jury power should not go unchecked. Unlike a traditional jury trial, at the grand jury state the accused has no ability to defend themselves against false representations made against them. Here there is ample evidence of the misconduct before the grand jury and this Court must hold the government accountable.

---

[2] It is important to note that Manheim had a contract with EMC Acceptance LLC while AFC had a contract with EMC Automotive Inc, two distinct companies. As such, the replevin action was for a separate company.

### b. Mr. Boliaux Received Ineffective Assistance Because His Counsel's Errors Amounted to Deficient Performance That Caused Prejudice

To prevail on a claim of ineffective assistance of counsel, a individual must establish that he was prejudiced as a result of his counsel's alleged deficiencies under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (citing Strickland, 466 U.S. at 694). "The benchmark for judging any claim to ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Under *Strickland*, the moving party must prove: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell*, 497 F.3d at 761.

### a. Failure to File Motion to Dismiss

For the sake of brevity, and to forego repetitiveness, Mr. Boliaux hereby respectfully adopts and reincorporates any and all legal and factual assertions made in the preceding section, *see supra, pgs. 2-13*, as evidence and support to his claim of ineffective assistance of counsel. Mr. Boliaux's trial counsel was in possession of every piece of evidence contradicting the government's grand jury testimony prior to trial. They were all produced to counsel through discovery and should have been reviewed, analyzed, and used as a basis for dismissal. The same can be said for Mr.

Boliaux's subsequent counsel who was present at sentencing when the government admitted that the 2002 Silverado in question was not double-floorplanned as had previously been asserted. Had a motion to dismiss be filed, Mr. Boliaux would not have had to stand trial on an indictment premised on falsehoods and misrepresentations provided to the grand jury. The failure to review this discovery and use it to further Mr. Boliaux's defense also falls within the purview of trial counsel's failure to "investigate the various lines of defense available in a given case." *Haramon v. United States,* 319 F.3d 943, 835 (7th Cir. 2003); *quoting Wiggins v. Smith*, 538 U.S. 510 (2003).

### b. Failure to Cross-Examine Material Witness

At trial, the government presented testimony from Todd Rowden, an attorney who represented Automotive Finance Corporation ("AFC") since the mid- to late-1990s. AFC was a floorplan lender who, back in 2008, asserted security interest in EMC Automotive's ("EMC") collateral. They were also a victim lender as referenced in the indictment against Mr. Boliaux. Rowden testified, in relevant part, that a replevin action brought in Will County, Illinois authorized AFC to seize certain vehicles from EMC's lot. *See Transcript of Proceedings*, 16 CR 115 (June 6, 2017, pgs. 247). AFC ultimately seized thirty-one vehicles from EMC's lot, only eleven of which were authorized by the schedule list of vehicles given to AFC by the presiding judge in Will County. *Id.* at pg. 255. Rowden further testified that AFC had learned that some of the vehicles that had been transported to Arena Auction for safekeeping for AFC and the court, had been released to Mr. Boliaux personally.

*Id.* at pg. 256.  It was his position that the vehicles had been improperly released to Mr. Boliaux as AFC had not been given notice of such.  *Id.*  One of these vehicles was the 2002 Silverado in question.  *Id.* at 258.  Trial counsel for Mr. Boliaux, for reasons unknown, chose not to cross-examine Rowden and his testimony went uncontroverted.

Failing to effectively cross-examine a witness simply cannot be the result of "reasonable professional judgement." *Dixon v. Synder*, 266 F.3d 693 (7th Cir. 2001). Cross-examination deficiencies must have "a reasonable probability" to undermine the confidence of the trial's outcome. See *Raether v. Dittman*, 40 F.Supp.3d 1097, 1101-04 (E.D. Wis. August 21, 2014). Whether a different outcome is reasonably probable is determined by the "totality of available evidence—bot that adduced at trial and the additional available evidence that adequate counsel would have procured." *Harris v. Thompson*, 698 F.3d 609, 648 (7th Cir. 2012).

Based on trial counsel's failure to cross-examine Rowden, the jury was undoubtedly left with the sense that Mr. Boliaux somehow improperly removed the vehicles from Arena Auction, in an attempt to perpetrate some sort of fraud. Particularly, because one of the vehicles, the 2002 Silverado, was the vehicles that was allegedly the crux of the charges against him – even though it was not double-floorplanned as the government would have liked the jury to believe.  *See supra*. Conversely, the 2002 Silverado was released because it "had nothing to do with AFC and actually belonged to Manheim Financial Services."  *See* Exhibit D.  it was actually Manheim Financial Services that released the vehicles to Mr. Boliaux as he

was not in default on those particular vehicles; they had no reason to keep them. This is in and of itself contrary to Rowden's assertion, as Mr. Boliaux did not have the vehicles released to himself, Manheim Financial did. The government, and Rowden, further knew that his testimony was false and misleading considering "AFC [had] since rescinded their court order involving the eight vehicles due to they were taken in error. AFC notified the judge handling the civil matter. . . The 8 vehicles issue has been resolved due to AFC rescinded their complaint. Ms. Dalton per email had authorized Mr. Boliaux to apply for duplicate titles." *See* Exhibit D. Yet none of this was brought to the jury's attention.

Trial counsel's failure to impeach witnesses on matters material to the defense counsel's strategy and presenting evidence material to that strategy at trial, objectively falls below the standard of reasonableness required of trial counsel. See *Moffett v. Kolb*, 930 F.2d 1156, 1161 (7th Cir. 1991). In *Moffet*, defense counsel was ineffective in a drive-by shooting case for failing to impeach the State's star witness on inconstant statements he gave to police contained in a police report. *Id.* The defenses strategy was that someone else shot the gun, not the defendant. *Id.* The defendant was convicted based on only eyewitness testimony of the State's witness stating he saw the defendant shot the gun. *Id.* at 1161-63. However, the witness gave a statement to police the day after the shooting that he saw someone else shot with the gun immediately afterward, someone else said they shot the gun, and that the defendant made an utterance indicating he did not shot ("Why did [other person] shot?"). *Id.* There was no direct evidence who shot and the victim could not

identify his assailant. *Id.* It was objectively unreasonable for the defense counsel not to impeach the witness with the police report as it was material to his defense. *Id.* There was a reasonable probability that the defense's strategy would have been successful had the witness been impeached because it would have established that someone other than the defendant shot the gun and diminished the State's star witness' credibility. *Id.* Failing to impeach and introduce evidence of the statements in the police report amounted to ineffective assistance and undermined the confidence of the outcome. *Id.*

Similarly, in *Raether v. Dittman*, in addition to being ineffective for failing to impeach the witnesses with inconsistent statements in police reports, the defense counsel also failed to adduce the significance of the evidence he had that could be used to impeach. 40 F.Supp.3d 1097, 1105-07 (E.D. Wis., Aug. 21, 2014). In that case, defense counsel attempted to utilize the strategy that there was no opportunity for the defendant to commit the assault in question. *Id.* at 1108. There was no physical evidence, and the state relied on the testimony of the victim and one of her friends who were at the party where the assault took place. *Id.* at 1105-07. The two witness gave testimony at trial that drastically different than the statements they gave to police the day after the assault (the court even called it "amplified recall"). *Id.* at 1103-04. The government's case turned on their testimony and failing to impeach them with the inconsistent statement was objectively unreasonable because it was a material aspect of the case. *Id.* at 1104-07. Besides failing to impeach the victim at all on her prior police report statement, he also

failed to adduce that he could impeach her friend on testimony she gave at trial that contrasted with her police report (she stated at trial the door was open but told police she had to open it with a credit card because it was locked). *Id.* at 1104-05. Had he properly adduced from the evidence he had, he could have attacked the witness' credibility which in turn would have diminished the victim's credibility as the State used the friend to bolster the victim's testimony. *Id.* He was also was deficient in preparing his own case, because he put on a defense witness that was damaging to the defense. *Id.* at 1105-06. The witness gave inconsistent statement, which was impeached by the State impeached. *Id.* But the defense counsel had never met with the witness and didn't prepared her to testify. *Id.* He also testified that he did not recall finding the discrepancies in the evidence when preparing. *Id.* His deficiencies were inconsistent with his strategy and there were no reasonable strategic calculations for his actions. *Id.* Accordingly, his failure to impeach on matters central to the case undermined the confidence in the trial's outcome. *Id.* at 1108.

It is particularly troubling that Mr. Boliaux's trial counsel did not cross-examine Rowden regarding these characterizations because not only did Rowden's allegations go towards Mr. Boliaux's alleged propensity to commit fraud, but they were in relation to the one vehicle at issue in the indictment. The claims made by Rowden are directly contradicted by an Illinois Secretary of State Police report, a voluntary statement by an Arena Auction manager, a Promissory Note, and UCC Secretary of State search. *See* Exhibit D. These documents, without a doubt, show

that not only was Rowden lying to the jury, considering he was AFC's counsel during the time of the improper replevin action and was the one personally inventorying the vehicles and, presumably, obtaining the court orders. Trial counsel was obligated to cross-examine Rowden regarding his lies, but failed to do so. There is nothing "reasonable" about this as it goes to a material issue in that AFC, an alleged victim, had been defrauded by Mr. Boliaux when, in fact, they had no interest in the 2002 Silverado. *See* Exhibit D (stating that the 8 vehicles belonged to Manheim Financial in its agreement with EMC, "having nothing to do with [Mr. Boliaux's] loans with AFC.").

Mr. Boliaux's trial counsel's failure to cross-examine Rowden not only prevented the impeachment of his testimony, but also the introduction of exculpatory evidence. The documents contained within Exhibit D were available to trial counsel prior to trial and should have been utilized in Mr. Boliaux's defense. Failure to do so further amounts to failure to "investigate the various lines of defense available in a given case." *Haramon,* 319 F.3d at 835: *quoting Wiggins v. Smith*, 538 U.S. 510 (2003). Trial counsel's deficiency in failing to impeach Rowden with the Secretary of State documents – which would have had an exculpatory effect on the trial – and is essentially the same deficiency of counsel in *Raether*. Without a doubt, this prejudiced Mr. Boliaux as the jury was left with the testimony of an experienced lawyer accusing Mr. Boliaux of fraudulently removing vehicles, when in reality, AFC had no interest in the vehicles and had even agreed to rescind their court order as to those vehicles.

This also allowed the government to present arguments during their closing arguments regarding AFC's interest in the eight vehicles Mr. Boliaux allegedly took from Arena Action, in particular the 2002 Silverado that was the crux of the case against him. Specifically, the government argued "AFC, by court order, had an interest in that vehicle. That was the – one of the eight vehicles that the defendant came back into possession of that he was obligated to notify them if there was a sale, and he lawyer was supposed to hold any of that money in a trust account for AFC's benefit." *See Transcript of Proceedings*, 16 CR 115 (June 9, 2017, pgs. 927). But none of this was true, and would not have been able to be argued had Mr. Boliaux's attorney not only properly cross-examined Rowden, but even attempted to do so. The attached exhibits to this memorandum show that AFC had no interest in any of the eight vehicles, including the 2002 Silverado and this should have been made clear to the jury.

Because Rowden was an attorney himself, it is likely that the jury gave more weight to his testimony than it would otherwise had if it had been a non-attorney witness. And an attorney's testimony should be held to a higher standard as they understand the seriousness of testifying under oath. In this case, not only did the government elicit testimony that was directly contradicted by documented evidence, but Mr. Boliaux's own attorney should have at least attempted to impeach him with evidence that was readily available to him. This is inexcusable on all parties and without a doubt prejudiced Mr. Boliaux. It further portrayed him as a fraudster and

essentially stole a car from AFC, when in reality they had no claim to it. This motion must be granted to affirm the prejudice suffered by Mr. Boliaux.

## CONCLUSION

Mr. Boliaux respectfully moves this Honorable Court to vacate and set aside his sentence that was entered in violation of the Fifth and Sixth Amendment rights. Specifically, as asserted above in detail, in an attempt to procure an indictment against Mr. Boliaux, the government elicited false testimony regarding the only vehicle charged in the indictment. They falsely stated that the 2002 Silverado was double-floorplanned and they falsely stated that an interstate wire was initiated through BluePay. No other evidence was provided in support of those assertion and the government had evidence directly contradicting both of those claims. For that same reason, Mr. Boliaux's counsel was ineffective for failing to file a motion to dismiss based on governmental misconducted during their grand jury investigation. To that end, counsel was also ineffective for failing to cross-examine a material government witness regarding Mr. Boliaux improperly obtaining eight vehicles from Arena Auction and that AFC actually had an interest in the vehicles, when in reality they did not.

Respectfully submitted,

*/s Vadim A. Glozman*
*Attorney for Edward Boliaux*

Vadim A. Glozman
VADIM A. GLOZMAN LTD.
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 726-9015

## **CERTIFICATE OF SERVICE**

I, Vadim A. Glozman, an attorney for Movant Edward Boliaux, hereby certify that on this, the 13th day of June, 2019, I filed the above-described document on the CM-ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

Respectfully submitted,

*/s/ Vadim A. Glozman*

VADIM A. GLOZMAN LTD.
53 W. Jackson Blvd., Suite 1410
Chicago, IL 60604
(312) 726-9015